The nature of this appeal, two, the proper analytical model, and three, what we think is the appropriate remedy. I begin by pointing out this is a sentencing appeal, and I feel the need to emphasize that because it's been re-characterized by the United States. It started out as a sentencing appeal in response to the pre-sentence report. If this is a sentencing appeal, then there's no problem with the second conviction. With respect, I would disagree. I think that… Well, then there is an appeal of the appropriateness of the second conviction. There's an appeal of the appropriateness of the second conviction. And that's based on the fact that there wasn't an instruction given and that there's a possibility that the jury might have convicted this person on different predicate offenses but on just one firearm. That they may have used one gun, and we would characterize that as much more than a possibility, and I think this is perhaps a good… Fine. There was five firearms right there by them, and the indictment alleged all five firearms as being used in the possession of either the different drugs that were involved. Well, I think that perhaps one good place to start in terms of responding is at page 520 of the record where the prosecutor told the jury, and I'm just going to read two sentences. He was in possession of five separate firearms. You can take your pick on which one that you want to choose for each drug, traffic, and crime for which he committed an offense. Take your pick for each one on each predicate offense. But why didn't you just make the objection? And to the sentence, to the instruction, then the jury knows, and then what you do is you kind of have evidence from which the jury can find that he possessed or used all five. Sit behind the log and then bring it up as a sentencing issue and say this is really about sentencing. It is not about the appropriateness of the conviction of the second conviction. Well, there are a number of responses. I have one. Of course, I'm here on the appeal, but if you're asking generically why the trial attorney didn't do that, I think it's important to point out that facially there is nothing wrong with the counts as they were charged. What would be wrong is trying to obtain one more sentence. What you've termed as laying behind the log, I think the government's characterized as sandbagging. From a defense perspective, would be prudence because what we're concerned about primarily is themselves. But the indictment alleged five different firearms as to each of the predicate offenses. Now you're complaining about, well, it's not very specific. It could have happened. All you had to do was make an objection to the jury instruction and say please advise the jury that in order for them to find them guilty of this count and this count that they can't rely on the same weapon. They must find unanimously that there was different weapons used. By way of a rhetorical response, I think that would be an ideal action for the United States to have taken, but I don't think that that was our obligation. All that would be doing would be committing suicide and basically asking us to tie the knot, if you will, around the noose by showing what was necessary for them to obtain second and subsequent sentences on the 924Cs. I don't disagree with you that it would be rather easy to cure, and I am going to address that momentarily. What I'm disagreeing with you about is, one, what you've characterized as a possible consideration. We've read the record. We know what was there. We think it was far more than possible, especially in light of what I had just read to you, the prosecutor directs. Because he had only aimed one? They only found that he possessed one? No, actually I think that it goes a little bit more than that. The record citations at 406, page 409, 410, 322, even the district court's order at 177, speak in terms of Mr. Campbell having used one gun. Mr. Campbell had said he knew about other guns, but the laser gun was the one that he'd used, and that was his choice of firearm. At least that was what the testimony was. So I think that, combined with the fact, again, as I said, that the U.S. attorney at the trial level had told the jury that that would be okay. They can choose whichever one they want. A more accurate statement of the law, of course, would have been, and I'll segue, if you will, would have been to say that, no, you cannot use one gun for multiple ones. And you're absolutely correct. But, counsel, it's the court that instructs the jury as to what the law is. Isn't that correct? Of course. And so the jury shouldn't be relying on the closing argument of the government or the defense attorney for what the law is. I'm not suggesting that what was said in closing argument is controlling or necessarily dispositive, but it's certainly illustrative. Without a doubt, it's illustrative, because that, combined with what the requested jury instructions were on the part of the United States, shows their misapprehension of what the law is, because they drove this into what I'm going to call a FIPS scenario, if you will. But then it sounds like a complaint about what the jury may have understood the law to be. And that goes right back to jury instructions, doesn't it? Well, a discussion of the jury instruction in the charge illustrates what was wrong, but understand, and I think this is a wonderful case to make this point, when the government is charging the way that it did, the defense does not necessarily know what's in the government's mind here. The idea that the government was able to secure a predicate offense conviction, and then the conjoining, if you will, 924C, they charge it three ways. They only got two. While this is going on, we're not aware exactly what the government's objective was. And I think whether it's to secure just one pair, two pair, or three. And the reason I say this is if you look at this particular case, one of the predicate offenses in the 924C dropped out. The jury couldn't come to an agreement on that. We don't know as it's going forward what's going to happen, where the pain or the steam comes in, is whether you pick up the subsequent sentence on the 924C. That's the prize here. That's obviously where we're complaining. But I don't think that it's our obligation to show the United States how it is that they need to request a court-instructed jury to make sure they get that second. Well, I guess that's what I'm trying to focus on, and I understand your argument. If, in fact, we knew that the jury found him guilty of the use of this weapon in two different predicates with the same gun, then you clearly have a sentencing issue. You brought it up as a sentencing issue, and you're saying he can't get this extra time on the very same offense. It can't be a subsequent offense, and he can't get this extra time, and that's clearly a sentencing issue. But that really doesn't seem to be what you're doing here. What you're saying is you're bringing it up as a sentencing issue on the possibility that he could have been found guilty, and you're really attacking the fact that the jury, in your mind, wasn't instructed. So there was no request for instruction. So it goes back to what are we really looking at and what is the standard of review? Because if it's really based upon the failure to give an instruction, which it looks like it to me, because you don't know one way or the other because we don't have a finding on it, and there was no request for an instruction, then we review for plain error. I certainly sense at this point I'm not going to concede possibility, and you've used the word possibility two or three times, so I won't reengage on that. I will reengage on suggesting that I absolutely am in agreement with your line of thought to the extent that the burden would be on the United States to seek the proper instruction of the jury. In a situation like this, I think it's actually malpractice for us to do something like that. Because what you're basically saying is, well, if you had made the correct request of the jury, then you would have made it easier, I'm sorry, of the court in terms of the instruction, you would make it easier for a jury to convict our client of that second 920 or subsequent 924C. That's not our obligation. That is theirs. But I do agree with you that it is easily done, but they didn't do it. With your permission, I'm going to move to the analytical model, the second point, because I think that's where we get into standard review and these type of things. The government completely recharacterized this, and I understand why they would. And, Kander, I think some of the questions you're raising signal why they would like to do that, because they want to run to plain error, and there's a certain, some might say, a certain Pavlovian response sometimes. Plain error has been very, very helpful to them. But not here, not in this case, and not today. The fact of the matter is, at the district court, in advance of the sentencing hearing, the United States said, well, we could have charged this differently, and we wouldn't be here. I'm paraphrasing. We wouldn't be here today. And that's set out in the brief and, of course, set out in the record. They acknowledge that they could have done things differently, and the question wouldn't be there. Now, the court obviously ruled against us. In their brief, which I'd point out, doesn't go through a full plain error analysis, but basically starts out, as a practical matter, with plain error, which I think is a concession of sorts. They again say, at pages 20, 21, well, yes, interrogatories might have been a permissible way to ensure that the error that we're claiming didn't happen. And then they even say that a jury instruction could have been given separate and aside from interrogatories. So they're saying all of the things that could have happened. I don't disagree those things could have happened, but I absolutely disagree that it's our obligation to complete that loop, if you will. They are seeking the subsequent sentences, the convictions and subsequent sentences. Obviously, we're not. I'd also want to point out, in terms of the legal analysis, that the district court, in its order at 177, mentions aiding and abetting. And that caught me by surprise because, of course, if you look at what actually went on in the charge conference, pages 468 through 470, the United States and the court and trial counsel, our trial counsel below, made sure that the aiding and abetting theory, that went to the drug counts. It was not a theory that the jury was instructed as to the gun counts. So I mention that because I think that's important to get in. That idea surfaced in the court's order subsequently. But that doesn't track the theory of the case as it was submitted to the jury. And I think that's also illustrative of the error that we're complaining of. And then I'd mention the third point, remedy. The government has said, well, since this is actually, in effect, a complaint about jury instructions, we're entitled, if the court were to send it back to retrial. And, again, I'm hopefully consistent with our first point. If it's a sentencing appeal, there is no retrial. There is a resentencing. And, to be sure, we would have some issues at resentencing that we would be dealing with. But we're prepared for that. And so I would acknowledge that a sentencing court has a wide discretion. But in this particular case, this particular sentencing, the district court was tying its punishments to the statutory provisions. There's no indication. There's no inoculation of the sentence, if you will. And I guess I thought, at least part of what you were complaining about, was that the jury could have found, erroneously, at least under 924C, that he used a single firearm in the commission of multiple predicate offenses. Yes. Yes, he could. And that's what the quote at 520. And you're saying we're not sure whether or not that's what the jury did. Well, we will never be sure, of course. And I don't mean that with any disrespect. We don't know exactly what they were concerned. But what we do know is that the prosecutor said, you may do this. And the way that it was submitted with this laundry list, we have no idea whether or not the jury was saying the laser-guided pistol is the one that Mr. Campbell used and used on the two predicate offenses. That would be error, and that is exactly what we're saying here. But that's a purely sentencing? I'm sorry? And that's purely a sentencing? In this particular case, this is the way it was raised. You have a conviction from a jury for these two different offenses, and by focusing on sentencing, you're saying that one of those convictions may not be any good because there's a possibility that something happened. So I don't know how you get to the sentencing issue  The conviction. And the attack that is being made is that because there was no instruction, so how do you get away from the fact that this is all based upon a failure to give an instruction? I don't. May I respond? Yes. I'm not trying to get away from that. I'm suggesting that the United States could have certainly obviated all of these problems in its attempt to secure additional punishment for the second 924C had, for example, the government made various requests, then I think that the trial attorney, our trial attorney, would have had an obligation, depending on what the nature of their requests were, to respond. But confronted with a set of instructions that are going to inure to our benefit, he was neither sandbagged nor laying behind the law. Well, they inure to your benefit. Your guy got convicted because, according to you, because of the failure to give an instruction that would have ensured that your client wouldn't have been unlawfully convicted. How did it inure to your benefit? It only inures to your benefit if you make this a sentencing issue instead of an instruction issue. Well, Your Honor, at the time that the charge is going forward and the parties are talking with the court and trying to determine what the correct submission of the law is, we don't know what's going to happen with regard to the second. With respect, hindsight is 20-20. A strategy issue. Well, the fact of the matter is that we knew... It inured to your strategy. We think our sentencing complaint, our point of error is solid on the law, and we don't think that the second sentence can stand. Whether or not the second conviction stands, and there's a special assessment in the term of super, we can deal with that, but the 25-year extra time is what everyone was focused on, the subsequent convictions, subsequent sentences, and we think that it is error for... It was error for the district court to have imposed the additional 25 years. Thank you. Thank you, Mr. Beard. You've saved some time for rebuttal. Mr. Wormany? May it please the Court, Andrew Wormany for the United States. Mr. Campbell's claim must be reviewed only for plan error and he could never satisfy that high standard. There's no dispute that the evidence in this case was sufficient for this jury to return to Section 924C convictions. In fact, the district judge, after sitting through this trial, determined that the government had presented overwhelming evidence that Mr. Campbell possessed five separate firearms in furtherance of two separate drug trafficking crimes. Instead, he focuses his argument on alleged shortcomings in the indictment and the jury instructions that at least according to him, theoretically, conceivably, could have allowed this jury to return to Section 924C convictions yet have found that he possessed just one of these five firearms. To the extent that that theoretical possibility is at all relevant, blame for it rests entirely on Mr. Campbell. Despite multiple opportunities below, he never objected to the indictment or to the jury instructions. And under those circumstances, familiar principles require his claim to be reviewed only for plan error. I just want to highlight two aspects of this statement. Is this a sentencing issue or is this a jury instruction issue? It's absolutely a jury instruction issue and I'll start with my second point first. Section 924C1C sets out a mandatory minimum sentence. If the jury returns a second or subsequent 924C conviction, the district court is required to impose a sentence of not less than 25 years. In this case, it's indisputable that this jury found a second 924C offense and the evidence was frankly overwhelming in support of that verdict. And once the jury made that determination, the district court didn't have any discretion but to impose the sentence that it did. So this is not a sentencing issue. Instead, the alleged problem arises pre-sentence and lies with the conviction itself. You're saying this is an attack on the conviction? Absolutely. The problem here lies with our, at least according to Mr. Campbell, lies with... Counsel is correct, though. The conviction has to be for a separate offense in order for you or the government or the law to prevail in terms of this mandatory second offense. So that conviction has to be a valid conviction, right? It has to be a valid conviction. And so what if it's not a valid conviction? Then isn't it a sentencing issue that if it's not a valid conviction, then you can't have this mandatory sentence? This is just like any other jury instruction issue. If the government submits a mail fraud case to the jury without the intent element, the defendant fails to object. It comes up on appeal. It's just not an automatic, you know, we affirm the conviction but we're not going to sentence him on the conviction. It's an issue of plein air. In that case, it very well may be plein air, and the conviction may very well be reversed, but in this case, it's not. And I think the principal problem here arises from our lack of knowledge about how the jury used the facts presented in this case, which were unquestionably sufficient to support two 924C convictions, to reach that second verdict. The only way that that alleged problem could have been cured below is through more precise instruction, which confirms that this is a jury instruction issue that was never put before the court at an appropriate time and that this court's review is limited to plein air. And remember, raising an objection below, that's only part of what's necessary to preserve error. Objections also have to be timely, and they have to put the district court in a position where it can correct the alleged error. And that's the entire point of requiring a contemporaneous objection in the district court. So the district court can weigh in on the issue in the first instance. We don't have to come up here and argue about the issue. And here, not only was Mr. Campbell's objection grossly belated, but it came at a time when the district court's hands were tied, and it could issue no effective remedy. Let's assume that it's a plein air analysis that applies. We have a subsequent case that suggested this type of thing, that we would deal with it as plein air. Would you make your plein air or present argument as to why it's not plein air in the light of what this court has said in Phipps? Absolutely, Your Honor. Remember, United States v. Phipps is a statutory construction case. It didn't involve the indictment. It didn't involve jury instructions. The court there said that a defendant's single use, a single firearm in the presence of two predicate offenses, doesn't create two separate offenses under the statute. In that case, that's exactly how the government charged the case, and that's all the evidence permitted the government to prove because there was only one gun involved. The decision doesn't remotely suggest that the statute doesn't support two convictions where you have overwhelming evidence showing that the defendant possessed not one but five firearms. But if you look at the theory of it, you would have to agree with the theory of the case in terms of that analysis, that while the predicate offenses may differ, the actually gravamen of the offense is the use or possession of the weapon, and you can't and you must have different weapons involved. Well, I think the question of error is fairly close. And if that wasn't the view of the court, they would have never got to the decision that they made in Phipps. The question of error is fairly close. The question of plain error is not. The court there explicitly said that 924C supports as many counts as the number of firearms involved in the offense. This isn't just absolutely nothing about how a jury should be instructed in this issue. It doesn't even vaguely suggest that special interrogatories are required. And remember, the giving of special interrogatories, that's always a matter of the sound discretion of the district court. So while it's just like any other jury instruction issue. These are abuse of discretion type issues. So even if the logic of Phipps suggests that special interrogatories may be required in some multi-gun cases, for instance, maybe there's evidence that shows the defendant possessed just one of several guns. Maybe the government's theory of prosecution is that there are several guns involved in the offense, but the defendant is uniquely tied to only one of the guns to the exclusion of the others. The decision certainly doesn't require special interrogatories in every single multi-gun case. And here I would say the district court didn't even abuse its discretion, let alone plainly err in failing to give special interrogatories, because there was absolutely nothing that it heard in the trial of this case that would have suggested to it that this fact pattern presented the single-gun issue from Phipps, that there would be some risk of juror confusion. And third, Phipps is an extremely narrow case. If you look at the opinion there, it really bent over backwards to emphasize that it was tethered to the unique, extraordinary facts that were before the court. And the court repeatedly lamented the difficulties of applying Section 924C to new factual scenarios like this one. I think all of that was played out in the district court here. The district court required two rounds of briefings, two separate hearings, before it was even able to understand this issue well enough to issue a ruling. So the government would contend that the error here certainly wasn't plain. Was one of the arguments to the district court that this matter should have been taken up at the point where the jury was being instructed, where you were at the jury instruction conference? Is that an argument the government made at the time? I'm not sure if the government explicitly made that argument. I think it was certainly implied based on the procedural posture that we were in. But I would just remind the court that that's really a standard of review question for this court. So regardless of whether the government made that argument below, it's not something that we can waive or bind this court to. This court will always determine its own standard of review. I can't find any. I'm trying to figure out, and it may not be important to the resolution of this case, but I'm trying to see what difference it made what the judge said about law parties and stuff like that in this case as a justification. I can't understand. How would you back up what the district court gave as justification relying on the law parties? Sure. Several points on that. I think the heart of the district court's analysis was that any alleged error here was effectively harmless because the evidence was overwhelming that Mr. Campbell did not just possess one firearm. I think that analysis applies with particular force in the standard of plain error review where it's his burden to prove prejudice to substantial rights. Now, particularly with respect to the aiding and abetting portion of his analysis, it is absolutely true here that the jury was not specifically instructed as to aiding and abetting with respect to the 924C counts. But the court did give this court's pattern charge on aiding and abetting, which explicitly states that any crime can be committing under an aiding and abetting theory. Of course, aiding and abetting is always implicit in the indictment. I don't see anything in this jury charge that ruled out this jury from relying on an aiding and abetting theory with respect to the 924C counts. But I don't think that it's perhaps the clearest analysis, and the district court is certainly not bound by it. I think the district court's analysis is useful to this court because you have a trial judge that sat through this evidence, weighed the arguments, and made this sort of harmless determination that this court now needs to make under the third prong of plain error review. And when this court looked at the facts of this case, it came to the conclusion that it's simply not reasonably possible that a jury here found that Mr. Campbell possessed just one of these five guns. And in the context of the third prong, Mr. Campbell must prove that this jury would have found that he possessed just one of these five guns had he received further instructions. I believe that's the appropriate way to frame the third prong here. And the record precludes that showing. There's really only three possibilities on this record, that Mr. Campbell possessed five weapons, he possessed two weapons, or he possessed no weapons. We know the jury didn't make the latter determination given its verdict. When the officers executed the search warrant in this case, they found Mr. Campbell seated on a couch with his co-defendant in a known drug house with five loaded firearms within his immediate proximity. There were drugs scattered throughout that house in plain view. The record shows that he had a key to that house, that he had been in that house alone. He admits that he sold ecstasy. He sold marijuana from that house. And I think most importantly for the 924C question, he admits that all of those guns were in that house to protect from robbery. Remember, this is a trap house. There's absolutely nothing in that house that anyone would want to rob except narcotics and narcotic proceeds. And if there was any basis here to speculate about— No, it wasn't used for residential purposes at all. I mean does the evidence reveal that it was just exclusively used for distributing drugs? Yes, and I think the evidence would show that it's what officers would refer to as a trap house. Some were set up just to sell drugs. I think the district court makes that observation in its opinion as well. Now, if there was any basis here upon which the jury might have narrowed Mr. Campbell's possession from five weapons, it certainly wasn't to one gun. It came from the fact that when these officers executed the search warrant, two of those guns were found in plain view. And he admitted in his post-arrest interview that those two guns would have his fingerprints on them. He said in his post-arrest interview that, I was seated on the couch. The officers came in. I looked to my right. There was a pistol. I looked to my left. There was another pistol. All those firearms, he said, were there to protect that house against robbery. So we know, I would say, beyond any doubt that this jury found that Mr. Campbell possessed either five guns or two guns. And in the context of plain error review, Mr. Campbell certainly cannot carry his burden to prove that this jury would have found that he possessed just one gun had special interrogatories been submitted. In fact, by framing his argument in terms of the government's alleged inability to prove that this jury did not find that he possessed just one of five weapons, he all but concedes that he can't satisfy his burden. Did the indictment charge both as to possession and use of a firearm or only possession? The indictment charged a theory of possession only. Possession only. Possession only, which remember is a— And possession was defined when? Possession was defined. And remember, possession is a lower standard than use or brandishing. And I'd like to address a couple points that Mr. Campbell has made. On the point of the one, the specific pistol with the laser point on it that Mr. Campbell pointed at one of these undercover officers, that happened four days before the events charged in the indictment. That's not the factual pattern that's charged by this indictment. It was admitted at trial under Rule 404B, and the jury received the standard instruction that it wasn't to consider other acts' evidence as substantive evidence of guilt. Of course, we presume that jurors follow those sorts of instructions. On this idea that the government somehow bore the burden of putting a perfect charge before the district court, that would turn familiar principles of jury instruction charging offers on its head. But was this an incorrect charge? Were the instructions incorrect? I think the giving of special order auditories is always a matter within the sound discretion of the district court. There is tons of case law that says that, and that has to be determined on a case-by-case basis. If you look at the evidence in this case, I don't see why a trial judge would abuse this discretion by failing to give a special order auditory. Because there was absolutely nothing that would have suggested to this jury, especially in the absence of an objection, that this factual pattern presented the risk of juror confusion and the risk that this jury would have found that Mr. Campbell possessed just one of the five guns the government alleged that he possessed and argued at trial that he possessed. So, in the end, blame for any ambiguity in this court of arrest is entirely on Mr. Campbell. Despite opportunities below, he failed to raise timely objections to the jury charge. Instead, he gambled on the verdict, and then he tied the district court hands with a severely belated objection. I think that relegates his claim on review only to plain error. That's a standard that he can never satisfy. I just want to come back to one point before my time runs out. In addition to failing to raise this issue, something I think the two panels already picked up on, there's a certain lying-behind-the-log quality to all of this. Mr. Campbell really wants to have this case both ways. He says, well, he wanted this jury to have an opportunity to acquit him under the charge that the court gave. He had that opportunity. Now he says, I can't be sentenced in conformity with that jury verdict because that charge was purportedly flawed, although I raised no objection whatsoever to it. I think that's precisely the sort of lying-behind-the-log that this court and others have universally condemned in a variety of contexts, especially in the jury instruction context. This court looks at a case like United States v. McRae. I think it makes that point very clearly that defendants are not at liberty to recharacterize forfeited jury instruction issues as sentencing issues or Rule 29 post-trial issues because it takes from the district court the opportunity to correct the error. Obviously, the sentencing conference here, which took place four or five months after the jury was home, and often whatever they do in their lives when they're not jurors, this district court obviously had no ability to obtain additional information from them about the way they used the facts of this case to reach their verdict. The government obviously had no ability to go back to the grand jury and reindict this case in a different fashion. So it's clear that this court's review is limited to plain error. It's a standard that Mr. Campbell cannot satisfy. For those reasons, we'd ask that this court affirm the judgment. And I will concede the remaining two minutes of my time unless the court has questions. Thank you. Your Honor? Judge Benavidez, at the risk of perhaps muddying the waters as I look at the record for the gun counts, it does say knowingly possessed a firearm to wit. It gives the laundry list. Furtherance of a drug crime, comma, and he knowingly used said firearm during in relation to the drug trafficking. And it's the same type of language in number five. I think it's possession and use. If I have misstated, I apologize. But they're in the disjuncted, I guess. Yes, they are. The district court's order focused more on possession, but the actual use question, I think, does enter in. My opponent says that we did not object to the indictment. The indictments were facially fine and there would be no reason we would object to the laundry list and the abstract. That's at the beginning of the case. We're waiting to hear what the United States does to ensure that you don't have a FIPS issue. Now, the government says or suggests that FIPS is a very rare case. There is one case I would bring to your attention. It is not cited. I can certainly send the 28-J and I'm happy to do it. But United States v. Walters cements FIPS in this circuit's law. It's at 351 Fed Third 159. So FIPS is not an outlier or an orphan. Or if it was at one time, it's since been ratified and it is solid in this circuit's case law. I listened, but I don't hear what it is that the government's obligation to request a proper statement of the law so that they can achieve or obtain the subsequent increment of punishment. What's going on here, of course, is this individual could not get through a guilty plea. A guilty plea on a predicate count and then a 924C. It's not very, very common, but it happens from time to time. The district court, within its discretion, just said, fine, we're going to send it to trial. There were questions about what does it mean, possession versus ownership and things like that. The case goes forward to trial. The United States has a superseding indictment, certainly within bounds to do that. The United States talks about making sure that aiding and abetting doesn't bleed over onto the gun counts. That's part of the record as well, and I've given you citations to that. That was a major concern in the charge conference. And then the case goes forward. The United States does not see fit to ask for interrogatories or even a simple instruction saying, in order to find a subsequent 924C, you'll need to find that a different firearm was used. They've suggested, and we've hashed this out a little bit, that somehow we are remiss basically in carrying their water. They want the subsequent punishment. It's not at all uncommon in cases where a defendant moves from plea to trial for the government to come forward with a superseding indictment. It adds additional sting. They wanted the additional sting. They knew what to ask for. They've said at the sentencing hearing what they could have done differently. They've said on appeal what they could have done differently. They didn't do these things. They're suggesting that we're remiss in not trying their case for it. That's basically what's at issue here. And even though, Judge Graves, what may or may not be said at closing argument may not be dispositive of an issue, it is illustrative. They didn't understand what the law was that they needed to have the jury instructed on in order to secure a conviction and then for the district court to sentence appropriately or accordingly. You said that they didn't understand what the law was, but FEPPS is very limited. FEPPS doesn't even say it required. It just says under the facts and circumstances here and the fact that this one gun was given to somebody immediately after it was – I mean the idea that the law requires this on the basis of FEPPS is – I don't know how strong a position that is. FEPPS, to be sure, FEPPS's language is FEPPS's language. It talks about that we have a statute that reeks of ambiguity. It was a lenity case. And we're not faced with a situation where there are a number of firearms present or whatever. No, you're absolutely correct, Judge. And that's what we have here. Oh, no, you're absolutely correct. And I mentioned Walters certainly as a courtesy to the court. And FEPPS did say perhaps a different situation obtains when we have multiple. All the more reason to exercise caution, I should think. And when I say exercise caution, I'm directing the comment to the United States. Appreciate your time. Thank you very much. Thank you for your zealous representation.